## Ellen Zipkie v. City of Chicago.

### Gen. No. 11,654.

1. INSTRUCTION—*exception essential to review action of court with respect to.* An exception to the action of the court with respect to an instruction is essential to the right to review such action upon appeal.

2. INSTRUCTION—*what does not supply absence of exception to giving of.* Making and urging upon a motion for a new trial that the giving

of particular instructions was erroneous, and saving an exception to the overruling of such motion, does not supply the absence of an exception to the giving of such instructions.

3. Instructions—*must be definite.* Where the meaning of an instruction is not plain, and it is liable to misinterpretation, it is proper to refuse the same.

4. Bill of exceptions — *need not recite that instructions shown therein are all the instructions given.* Where the bill of exceptions purports to contain all the instructions given by the court, an appellate tribunal will not, in the absence of an explicit statement therein that such instructions were all the instructions given, presume that other instructions were given.

5. Sidewalk—*when municipality not liable for injury resulting from condition of.* A municipality is not liable for an injury resulting from the condition of a sidewalk, where it appears that it was reasonably safe for ordinary travel, but was not reasonably safe for a gathering of from forty to seventy-five persons standing thereon and packed together, while attending an auction sale advertised by such municipality, where it does not appear that such municipality invited such people so to stand and pack themselves together.

6. Sidewalk—*when refusal of court to admit in evidence portion of a broken, not error.* With respect to the admission of such evidence, the trial court has a discretion which, in the absence of its abuse, will not be reviewed upon appeal.

Action on the case for personal injuries.  Error to the Superior Court of Cook County; the Hon. Theodore Brentano, Judge, presiding. Heard in this court at the March term, 1904.  Affirmed.  Opinion filed December 15, 1904.

Thaddeus S. Allee, for plaintiff in error.

John F. Smulski, City Attorney, for defendant in error; D. H. Wamsley, of counsel.

Mr. Justice Brown delivered the opinion of the court.

This is a writ of error to the Superior Court of Cook county, to reverse a judgment for costs against the plaintiff in error, in favor of the city of Chicago, the defendant in error.

The suit was brought in the Superior Court by the plaintiff in error against the city of Chicago for a personal injury sustained by the falling of a sidewalk on which she was standing, in front of a house at 3209 Halsted street in said city, on May 8, 1900.  It was tried before a jury on

February 6 and 7, 1902. The jury found the defendant not guilty, and a motion for a new trial having been made, and after a long delay, denied by the court below, a motion in arrest of judgment was also made and overruled, and the judgment to reverse which this writ of error is brought, was entered.

The declaration on which the case was tried consisted of two counts, the second one being an additional count filed by leave of court shortly before the trial. The first count averred that on May 8, 1900, and before, the defendant in error possessed and had the control of South Halsted street, a public highway in the city of Chicago, and that on that date the plaintiff, exercising all due care for her safety, was standing on the sidewalk on the east side of said South Halsted street, opposite and in front of No. 3209; that it was the duty of the defendant to use reasonable care and caution in the construction and maintenance of said sidewalk, so that persons rightfully using the same might do so in safety, but that the defendant permitted said South Halsted street, at the time and place aforesaid, to become and remain out of repair, and in a dangerous, unsafe and insecure condition, in that the stringers and supports of said sidewalk were permitted to become and remain old, rotten, loose, decayed, insufficient, and insecure, so that while the plaintiff was thus upon the sidewalk, in the exercise of due care for her own safety, the sidewalk, without any warning to her, gave way and fell, precipitating her to the ground and grievously injuring her. The additional count avers that on the date aforesaid, the city was in control of said highway, and that prior thereto, it had published and advertised the fact that it would sell at public auction on said date, a certain house or houses which were located on the east side of Halsted street between Thirty-first and Thirty-third streets, and that it solicited and invited the public to said public sale at the date aforesaid, and that plaintiff, pursuant to such public announcement, advertisement and invitation on the part of defendant, attended at the time and place aforesaid at the said public sale; that

said auction sale by the defendant was held and took place at the time and place aforesaid, and upon the sidewalk on Halsted street in front of the said house or houses between Thirty-first and Thirty-third streets. It further avers that it thereupon became and was the duty of the defendant to use reasonable care to see that said sidewalk at the time and place aforesaid was in a reasonably safe and secure condition, so that at said time and place it might be used by the public in safety. There are then allegations like those in the original count, that the defendant allowed the sidewalk to become and remain, before and at the time aforesaid, insecure and unsafe, an allegation in addition that the defendant knew before and at the time aforesaid, that said sidewalk was in a dangerous and unsafe condition or might have known thereof in the exercise of ordinary care, and the allegations as in the original count concerning the fall of the sidewalk and the injury of the plaintiff.

To this declaration the general issue was pleaded by the defendant.

The errors assigned in this court on the action of the court below include the giving of certain improper instructions offered by defendant; the refusal of certain proper instructions tendered by the plaintiff; the refusal to admit proper evidence tendered by the plaintiff; the admission of improper evidence offered by the defendant, and the refusal to grant a new trial, inasmuch as the verdict was manifestly against the law and the evidence, and the weight of the evidence. In plaintiff's brief and argument the only points urged, however, are that the court erred in giving to the jury certain instructions, numbered defendant's given instruction 3 and defendant's given instruction 8; that it erred in refusing to give to the jury an instruction tendered by the plaintiff and numbered refused instruction 2; and that on the merits of the case as made the plaintiff should have had a verdict, and that a new trial should therefore have been granted.

We are precluded from considering the question whether the instructions which were given, and are complained of,

were erroneous, by the fact that no exception is shown by the bill of exceptions to have been entered or preserved to their being given. The Practice Act, which went in force July 1, 1872, provides that exceptions to the giving or refusing of any instructions may be entered at any time before the entry of final judgment in the case, but it has been directly decided, both by the Supreme Court and this Court, that this does not obviate the necessity of their being formally taken and entered before such final judgment and preserved in the bill of exceptions, if the party objecting desires to have the benefit of his objections in an Appellate Court. England v. Vandermark, 147 Ill. 76; Smith v. Chicago City Ry. Co., 107 Ill. App. 177. And it has also, since the passage of said Act, been decided directly by the Supreme Court and by the Appellate Courts of other districts, that making and urging the point in a motion for a new trial, before the entry of judgment below, that given instructions were erroneous, and then excepting to the order overruling such motion, does not preserve an exception to the instructions so complained of. Illinois Central R. R. Company v. Modglin, 85 Ill. 481; East St. Louis Electric Street Railroad Co. v. Cauley, 49 Ill. App. 310; Shively v. McKinney, 84 Ill. App. 406. We cannot therefore consider the accuracy or inaccuracy of the instructions which were given by the trial court in this case.

It is argued by counsel for defendant in error that we are also precluded from considering whether or not the court below should have given the instruction denominated plaintiff's refused instruction 3, because the bill of exceptions does not explicitly state that the instructions which appear by it to have been given, were *all* the instructions given by the court. It is said that without such statement, we are not at liberty to presume that other instructions covering the same proposition may not have been given. This, however, is not the law. In the late case of Siegel, Cooper & Co. v. Norton, 209 Ill. 201, the court says: " Where the record and abstract purport to give the instructions, it is not necessary to state that no part of the con-

nected series has been omitted. In this case the instructions given at the instance of each party and the instructions refused are numbered consecutively, and there is nothing indicating that anything is omitted, so that there is no warrant for assuming that there has been any omission." The same state of things exists in the case at bar, and we are at liberty, therefore, to consider the refusal of the instruction offered by plaintiff in error in connection with the instructions which appear in the record as given. It is as follows:

" The court instructs the jury that if you find from the evidence and under the instructions of the court, that the defendant held a public auction sale of the building in question, as charged in the plaintiff's declaration, then it was the duty of the defendant to exercise due care to see that the place where such sale was held was in a reasonably safe and secure condition for persons attending such sale in the exercise of ordinary care."

One objection to this instruction, which seems to us patent, is a vagueness or want of precision, which might make it misleading as applied to the pleadings and facts in this case. The duty of the city to exercise due care to see that " the place where such sale was held was in a reasonably safe and secure condition for persons attending such sale," is conditioned upon a finding by the jury that the city held a certain public auction sale of a building " as charged in the plaintiff's declaration." The charge of the declaration is that the city "advertised that it would sell at public auction a certain house or houses located on the east side of Halsted street between said Thirty-first and Thirty-third streets, and that said defendant did solicit and invite the public to attend said sale on said date; that said plaintiff, pursuant to such invitation, attended said public sale at the time and place aforesaid, *which was held by the said defendant on said sidewalk on the said Halsted street in front of the said houses.*" We may suppose, therefore, that when, in this proposed instruction, plaintiff's counsel used the words, " if the defendant held a public auction, etc, as charged in the declaration" he meant if the defend-

ant held a public auction of the houses in question " on the sidewalk on Halsted street in front of said buildings," and that by the words, " then it was the duty of the defendant to exercise due care to see that the place where such sale was held was in a reasonably safe and secure condition for persons attending such sale in the exercise of ordinary care," he meant, " then it was the duty of the defendant to exercise due care to see *that said sidewalk on Halsted street in front of said buildings* was in a reasonably safe and secure condition for persons attending such sale in the exercise of ordinary care, to stand upon in such numbers and positions as might be reasonably expected at such a sale." This, or something very like it, is the meaning which is placed upon the proposed and refused instruction by both plaintiff and defendant in error in their arguments. Therefore we may assume that this was its meaning, although it certainly might have been much more clearly, definitely and precisely expressed. At all events, unless such a paraphrase as we have given states correctly the law applicable to this case, the instruction as offered was properly refused, for if it was intended to mean something implying a less obligation on the city than is above stated, it was misleading in that it would naturally have led the jury to suppose that the city was held to the liability which we have above set forth. The question on this instruction may therefore be considered to be, was the city, under the circumstances disclosed by the record in this case, liable for an accident resulting from the condition of the sidewalk in question, if said sidewalk was reasonably safe for ordinary travel, but was not reasonably safe for a gathering of from forty to seventy-five people to stand on packed together, as they would be likely to be at an auction sale? In this aspect the question is an interesting one, but we think the answer must be adverse to the contention of plaintiff in error. In the first place, there is nothing in the record which shows that the city did, by its advertisement or otherwise, invite the people who attended said sale to stand upon this particular sidewalk. The advertisement

Zipkie v. City of Chicago.

does not appear at all in the record.   It presumably declared the place of sale to be "on the premises."   At all events it cannot be presumed that it designated the sidewalk particularly.   Nor does it even appear that the condemnation clerk or officer who, for the city, conducted the sale, gave any other invitation or direction for persons attending the sale to stand on the sidewalk, than might be implied from his taking his own position as auctioneer on the sidewalk nearer the house than the street.   It does not appear that persons who were prudent enough to desire to avoid a crowd on a raised platform, like this sidewalk, might not have stood in the street below and heard and been heard by the auctioneer.   But even if the action of the "condemnation clerk" in the choice of his position as auctioneer is to be construed as an invitation to the people to throng near him on a sidewalk not sufficiently strong to bear their weight, it would not follow that the city's duty as to that sidewalk was changed.   In his capacity as a public officer to carry out a governmental and municipal duty for the city, he could not make the city liable in tort by rashly choosing an improper place and method for doing that act, while others were open to him.   Such an officer might, to put an extreme case, by such an invitation ask the people who attended a sale of this kind to stand before him on the tracks of an electric or steam railway.   Certainly in such a case the city would not be liable for a resultant accident.

This is not a case where a municipality allows its private property to fall into an unsafe condition for the purpose for which it is intended, or for which, by contract, it is used; and the cases cited on the liability of a municipality under such circumstances have no proper application. In this case the action of the city of Chicago was in its public and State-given character.   It was in the execution of a power especially delegated to it as a State agency. While the evidence is not full on the nature of these proceedings, this can properly be gathered from the testimony of Mr. Glackin, the condemnation clerk for the city, as it

appears in the record.   Revised Statutes of Illinois, chapter 24, article 5, sec. 1, par. 7, and chapter 24, article 9. From these various considerations we are of the opinion that the city was under no greater obligation in respect to this sidewalk, than it is in respect to all its sidewalks. This obligation binds it to see that they are kept in reasonably safe condition for ordinary travel, but does not bind it to provide for their safety under the strain of an unusual gathering or any extraordinary use.   City of Bloomington v. Bay, 42 Ill. 503; City of Chicago v. Kohlhof, 64 Ill. App. 353; Kohlhof v. City of Chicago, 192 Ill. 249.

In City of Chicago v. Keefe, 114 Ill. 222, in its additional opinion on the petition for rehearing, the Supreme Court thus expresses the rule :   " The measure of the duty of the city in regard to its streets is limited by the necessities of the ordinary modes of travelling or passing along the streets."

The instruction we have discussed, offered by the plaintiff, and implying a greater obligation, was therefore properly refused.

Complaint is made of the refusal of the trial court to admit certain portions of the broken sidewalk in evidence, and counsel have cited several cases from which it can be argued that such admission would not have been error. This may be conceded, but the cases are not to the proposition made by the plaintiff in error, that the exclusion *was* error.   The authorities hold that such exhibitions for the inspection of the jury are within the discretion of the trial court, which will not be interfered with unless abused. In many cases the exhibition of physical objects may explain and illustrate better than anything else the occurrence under investigation—in others they may only tend to mislead and confuse.   We see no reason to hold that the discretion of the lower court was not properly exercised in the present case.

On the general question of the negligence of the defendant in error, assuming that its obligations were that under which it lies as to its sidewalks generally, the jury, with

conflicting evidence before it, found for the defendant in error, and we are not justified in disturbing that verdict or the judgment founded upon it. The judgment is accordingly affirmed.

*Affirmed.*